Ronald Ryan
Ronald Ryan PC
Attorney for Debtors
1413 E. Hedrick Drive
Tucson, AZ 85719
(520)298-3333 ph 743-1020 fax
ronryanlaw@cox.net
AZ Bar #018140 Pima Cty #65325

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA, TUCSON DIVISION

| | |
|---|---|
| **ANTHONY TARANTOLA, DEBTOR** | Case #   4:09-bk-09703-EWH |
| **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2004-W8, ITS ASSIGNEES AND/OR SUCCESSORS, MOVANT** | **ANALYTICAL APPROACH TO STAY RELIEF MOTION EVEN IF "COLORABLE CLAIM" IS THE STANDARD**  **AND RESPONSE TO MOTION IN LIMINE AS TO THIRD PARTY SOURCE PAYMENTS**  **HEARING: 6/23/10 @ 9:00 AM** |
| **VS.**  **ANTHONY TARANTOLA, DEBTOR RESPONDENT** | Chapter 13 |

COMES NOW, Anthony Tarantola, Debtor and Respondent, and files this Debtor's Statement as to Analytical Approach to Stay Relief Motion Even If "Colorable Claim" Is the Standard and Response to Motion in Limine as to Third Party Source Payments , and present unto the Court as follows:

**THIS IS PRESENTED TO AID THE COURT DURING THE PRESENTATION OF TESTIMONY**

Page 1 of  10

**ANALYTICAL APPROACH TO STAY RELIEF MOTION EVEN IF "COLORABLE CLAIM" IS THE STANDARD**

Premise 1: A Prima Faci Case is not even considered until Constitutional Standing and Real Party in Interest has been established, which requires proof by the Claimant of ownership, holdership and right to enforce.[1]

Premise 2: There is no such thing as "Colorable Standing." No litigant may proceed in a federal Court without Standing.

Premise 3: Even if Movant were to get past Standing considerations, the presentation of a Note that is indorsed to the Movant, even if the original, is NOT ENOUGH. THERE ARE SEVERAL OTHER CONSIDERATIONS AND FACTORS TO EXAMINE before determining that a "Colorable Claim" is made.

---

MOVANT'S BURDEN

Step 1: STANDING: A Claimant must prove that it has Standing. See Master Brief 06/16/2010 doc 65, p 1, line 21 to page 4, line 9, and included footnotes for an overwhelming abundance of recent stay relief cases where what would have passed as a "colorable claim" if the Court had not used a greater degree of scrutiny and legal reasoning, and then criticized the Movant's for presenting such evidence. See Master Brief ("MB") p. 1, line 10 to p. 10, line 17 for briefing on the two types of standing. The most important thing to remember is that the named party must be the Real Party in Interest ("RPI"), which means that they are the party whose own financial interests are at stake. It also means that they must a) <u>OWN THE NOTE</u>;[2] b) be the Holder of the note; and c) be a party with the right to enforce the Note. All three are necessary. These things must all be <u>PROVEN</u>.

Step 2: WHAT TO PROVE BASICS OF PRIMA FACI CASE: Proof that one

---

[1] See the beginning of the next section discussing ARS § 47-1201(b)(21)(a); 47-3104(A) and (B); 47-3106(A)); 47-3201(A) and (B); 47-3203.

[2] Movant has skirted the issue. It has not even claimed to be the owner in the MLS and see also Debtor's Summary of Movant's Responses to Discovery, comparing the discovery requests indicated with the response. They refuse to answer questions whether they (the MBS Trust on behalf of the Certificate Holders) are the Owner of the Note.

Page 2 of 10

Case 4:09-bk-09703-EWH   Doc 74   Filed 06/23/10   Entered 06/23/10 08:29:08   Desc
Main Document    Page 2 of 10

or another is the "holder" requires proof that the instrument is negotiable,[3] and has been negotiated to the party claimed to be the holder, or in blank, and is in the possession of the party claimed to be the holder, or the party proven to have authority to act on their behalf, that has been physically transferred to the party claimed to be the holder, or the party proven to have authority to act on their behalf, for the purpose of giving the right to enforce the instrument to the party claimed to be the holder, or the party proven to have authority to act on their behalf . ARS § 47-1201(b)(21)(a); 47-3104(A) and (B); 47-3106(A)); 47-3201(A) and (B); 47-3203.

Step 3: CHALLENGE VALIDITY, AUTHENTICITY AND AUTHORITY OF INDORSEMENTS IN PLEADINGS: And if the authenticity and authority for each negotiation is challenged in the pleadings, the burden to prove this is also on the party claiming the right to enforce the instrument. A.R.S. § 47-3308. Authenticity and authority for each negotiation includes not only those negotiations that are present, but also the explanation of missing indorsements, because when a Note is securitized it must be sold, negotiated and transferred from the Originator ("Lender") through 1 or 2 intermediary parties and then lastly to the Trustee on behalf of the Certificate Holders in the MBS Pool, all within 180 days at most after issuance, and in the precise order as set for in the Pooling and Servicing Agreement ("PSA"), Prospectus and federal REMIC law, all no later than the "Cutoff Date" or "Closing Date." See below for a fuller explanation.[4]

Step 4: Movant makes a "Colorable Claim" to right to stay relief, which requires a) "Request by Party in Interest" which would be established if they have gotten to step 4 in the analysis. b) "Cause," which can include failure to make monthly mortgage payments, as pointed out by Movant in the Motion to Lift Stay ("MLS"), ¶ 13, line 8-10. c) "Cause" may include lack of adequate protection; of an <u>interest in property</u>;[5] by <u>such party in interest</u>. § 362(d)(1). Accordingly, there must be proof not only that the Movant be the Owner of the Note, for RPI status, but the Movant must also be the Owner of the security interest in Debtor's Property. d) "Cause" may include lack of equity by

---

[3] See MB, p. 19, line 6 to p. 20, line 11, showing that other agreements that are part of the same transaction renders a Note that was securitized non-negotiable. This is supported by Debtor's Securitization Expert, Neil Garfield.

[4] This is supported by Debtor's Securitization Expert, Neil Garfield.

[5] Obviously "Debtor's Property" upon which stay relief is requested.

Page 3 of 10

Debtor in Debtor's Property, and not necessary to an effective reorganization.[6]

Premise 4: Movants' cases, as in this case invariably consists of an accounting of Mortgage Note payments missed by Debtors, accompanied by a Note indorsed to the Movant or in blank.

Premise 5: Assuming movant appears to have met its burden of proof on the above, it is debtor's turn to present its case - it is simply not fair or just to hold that the law is that only one side may present a case, but debtor never gets its turn to present its case - debtor may controvert the contention that a prima faci case and a colorable claim have been made by debtor.

Premise 6: The only thing that can be counted on never to change is the fact that there will always be change. It is irrational to assume that just because all Stay Lift cases and Mortgage Claim actions always went a certain way in the past that they would continue always to be the same, regardless of a plethora of changes in circumstances and conditions that relate to the transaction.

Step 5: DEBTOR'S TURN BEGINS WITH tearing apart every item above that has not already been shown to have not been proven by Movant.[7]

Step 6: THEN DEBTOR ASSERTS THE NOTE IS NOT NEGOTIABLE: The process that occurs when a Note is Securitized, and the rules governing the administration of the Pool, pursuant to the Securitization Documents ("SD"), has a number of affects upon the Note, pursuant to the UCC. First, the note is no longer a negotiable instrument, because it is no longer an unconditional promise or order to pay a fixed amount of money. § 47-3104(A) and (B); 47-3106(A). The SD add new transactions, including contracts between parties unknown to the Maker/Borrower, including the Owner of the beneficial interest

---

[6] "Not necessary to an effective reorganization" has been defined as Debtor not being able to show that it can make the payments in the future. (Authorities supplied upon request).

[7] See Section below, entitled, "Prima Faci Case on What Appears to Be a Negotiable Instrument and Challenge after Prima Faci Case Has Been Made"

Page 4 of 10

in the Note. The SD add terms and conditions to which the Maker/Borrower is not a party and which vary from those the Maker/Borrower agreed to, but are part of the same transaction or series of transactions. A.R.S. § 47-3117.[8]

Step 7: As Movant so aptly pointed out, in the MLS at ¶ 13, lines 8 - 10, "Failure to make post-petition mortgage payments can constitute cause for lifting the stay. The debtor has the burden of showing there is no cause to terminate the stay. *In re Ellis*, 60 B.R. 432 (9th Cir. BAP 1985)." This leads to the Motion in Limine. It is beyond absurd to argue that Debtor has the burden to prove there is no "Cause" and then to file a Motion in Limine against Debtor presenting evidence thereof. Debtor has proof that there is no default, and has proof that it is highly likely that the value of Debtor's equity is the entire value of the Property.

**RESPONSE TO MOTION IN LIMINE AS TO THIRD PARTY SOURCE PAYMENTS**

See MB, p. 23, line 21 to p. 27, line 15. Important factors are contractual provisions in Debtor's Deed of Trust ("DOT"), entitled "Miscellaneous Proceeds," and the Discharge by Payment" rule in the U.C.C. ARS § 47-3602(A). Evidence consists of the Securitization Documents filed with the SEC, Debtor's expert witness testimony, and Movant's Discovery Responses. The evidence is incontrovertible that Debtor is not in default and therefore there is no "Cause" despite missing mortgage payments. Additionally, it is highly likely that Debtor's mortgage debt has been completely discharged by payments.

**PRIMA FACI CASE ON WHAT APPEARS TO BE A NEGOTIABLE INSTRUMENT AND CHALLENGE AFTER PRIMA FACI CASE HAS BEEN MADE**[9]

The apparent right to enforce a Note merely establishes a prima faci case. That is not the end of the inquiry, nor does it establish standing inandof itself. A prima faci case includes that the Note: 1) appears on its face to be a negotiable instrument; 2) A person is entitled to enforce a note is a "Holder" A.R.S. § 47-3301. A) One such category is when the person is a holder of the note. Generally, a person is a holder of the note by having physical possession of the note, which has either been endorsed to that person or endorsed in blank. § 47-1201(B)(21)(a). A note may be endorsed by an allonge, which is a paper "affixed to the instrument," which then becomes part of the instrument. 47-3204(A); *Adams v. Madison Realty Dev., Inc.*, 853 F.2d 163, 167 (3d Cir.1988)

---

[8] This is supported by Debtor's Securitization Expert, Neil Garfield.

[9] There is probably no need to read this section.

(discussing why an endorsement written on a separate piece of paper must be <u>immediately and permanently</u> affixed to the note). Once a note is endorsed, its negotiation is complete upon transfer of possession. ARS § 47-3201. The transfer of possession requires physical delivery of the note "for the purpose of giving the person receiving delivery the right to enforce the instrument." U.C.C. §§ 3-203 cmt. 1, 1-201 (2002); *Vitols v. Citizens Banking Co.*, 10 F.3d 1227, 1233 (6th Cir. 1993); *Norfolk Shipbuilding & Drydock Corp. v. E.L. Carlyle (In re E.L. Carlyle)*, 242 B.R. 881, 887 (Bankr.E.D.Va.1999); Grant S. Nelson & Dale A. Whitman, *1 Real Estate Finance Law* § 5.28 (5th ed.2008). Possession is not enough. A "transfer" is physical delivery intended to give the transferee the right to enforce, including the rights of a holder in due course. §3.203(a)&(b). In order to enforce, then, a transferee must show physical possession. A mere receipt showing transfer of ownership is not enough. §3.203, comment 2. There must also be <u>evidence of intent</u> to transfer enforcement rights. Id., comment 2. If the transferee has no endorsement, it can "shelter if it can show its transferor was a holder or holder in due course." Id., comment 3.

The right to enforce a note cannot be assigned—instead, the note must be negotiated in accord with Arizona's version of the Uniform Commercial Code, which is pretty much identical to every other states' version. A.R.S. § 47-3301, et seq.

> An attempt to assign a note creates a claim to ownership, but does not transfer the right to enforce the note. The right to enforce an instrument and ownership of the instrument are two different concepts.... Moreover, a person who has an ownership right in an instrument might not be a person entitled to enforce the instrument. For example, suppose X is the owner and holder of an instrument payable to X. X sells the instrument to Y but is unable to deliver immediate possession to Y. Instead, X signs a document conveying all of X's right, title, and interest in the instrument to Y. Although the document may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the instrument until Y obtains possession of the instrument. No transfer of the instrument occurs under Section 3-203(a) until it is delivered to Y. OHIO REV.CODE § 1303.22 cmt. 1; see also U.C.C. § 3-203 cmt. 1 (2002).

*In re Wells*, 407 B.R. 873, 880 (Bankr. N.D. Ohio, 2009), appeal to District Court dismissed with prejudice at In re Wells, 1:09-cv-01879-DAP, Doc 11, Filed 01/28/10 (N.D. Ohio 2010). However, "... possession alone does not establish that the party [in possession of a note] is entitled to receive payments under it." *Citizens Fed. Sav.*, 78 Ohio App.3d 284, 287, 604 N.E.2d 772, 774.

> A person may be entitled to enforce a negotiable instrument if it has possession of the note without proper endorsement(s); however, proof that the person has rightful possession is required.

U.C.C. § 3-203, cmt. 1; *In re Wells*, supra at & fn 8.

Page 6 of 10

Even a holder that had the Note indorsed to them or endorsed in blank that can prove physical possession was transferred to them with the intent that they have the right to enforce the Note, does not make that holder the party whose own financial interest is at stake in the outcome of litigation involving enforcement of the Note. If they purchased the Note, then their own financial interest is at stake. A party to whom the Note was indorsed and transferred with the intent that they enforce that purchased the Note can be either a holder owner with right to enforce, or a owner holder in due course with the right to enforce, depending on

The issue that some Courts appear to be missing is that the presentation of evidence in Court in the form of Note that presents the APPEARANCE of a Note that has been endorsed and transferred to the party seeking to enforce the Note is not necessarily the end of the matter. First the validity of the endorsements must be established, one way or another under ARS § 47-3308(A), after which the party must prove entitlement to enforce the instrument under ARS § 47-3301, after which the party is still subject to claims and defenses, unless the party is a holder in due course.

> If the validity of signatures is admitted or proved and there is compliance with subsection A of this section, a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under section 47-3301, unless the defendant proves a defense or claim in recoupment. If a defense or claim in recoupment is proved, the right to payment of the plaintiff is subject to the defense or claim, except to the extent the plaintiff proves that the plaintiff has rights of a holder in due course which are not subject to the defense or claim.

ARS § 47-3308(B). When an alleged Obligor challenges the authenticity and authority to make endorsements in the pleadings, the burden is on the party seeking to enforce the instrument to prove the validity of the endorsements.

> In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic. . .

ARS § 47-3308(A). For every Note that was securitized, the Note was contractually required to be sold, negotiated and transferred through 2 or 3 entities before being sold, negotiated and transferred to the Pool. And the Note had to be transferred to the Pool prior to the "Cutoff Date," which by definition is the deadline for Notes to be Pooled in a given MBS Trust Pool, and this deadline is required by federal Internal Revenue Code REMIC law. The series of parties that held a Note from the Originator to the Pool is called herein the "Securitization Chain" (SC). The series of parties usually includes: Originator to Sponsor to Depositor to Pool. This series is what commentator and lecturer Max Gardner has called the ABCDs of securitization. The presentation of evidence in the form of a Note

Page 7 of 10

Case 4:09-bk-09703-EWH    Doc 74    Filed 06/23/10    Entered 06/23/10 08:29:08    Desc
Main Document    Page 7 of 10

which does not have each of the intervening endorsements he calls the "Alphabet Problem." The reason for the securitization chain is at least in part to make the MBS bankruptcy remote and FDIC remote.[10]

The basis for the ability to present a Note that has made a prima faci case is based on the proposition that the Note is a negotiable instrument. For reasons that will be presented and have been briefed, *********** Debtor's position, as supported by expert testimony is that a Note that has been securitized is no longer a negotiable instrument. If an instrument is not negotiable, all the arguments about endorsements and whether the documents appear, or have been made to appear to present a colorable claim do not apply if the Note is not a negotiable instrument. The Note can still be a contract to pay, but it is not negotiable and it is not entitled to presumptions that arise by virtue of a prima faci case.

The requirements to be a Holder to be a Holder in Due Course are in ARS § 47-3302. A. Subject to subsection C of this section and section 47-3106, subsection D, "holder in due course" means the holder of an instrument if: 1. The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and 2. The holder took the instrument: (a) For value; (b) In good faith; © Without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series; (d) Without notice that the instrument contains an unauthorized signature or has been altered; (e) Without notice of any claim to the instrument described in section 47-3306; and (f) Without notice that any party has a defense or claim in recoupment described in section 47-3305, subsection A.

The reasons for the requirement of producing proof of the entire chain of sales and transfers of Notes in order to establish standing include: a) Securitization; b) To clear up the cloud upon title due to improprieties with evidence that has been rampant over the past several years; c) Because of the fact that the evidence cannot be trusted due to the improprieties with evidence that has been rampant over the past several years, including the presentation to Courts of misleading evidence. d) There are valid challenges to the endorsements on the evidence presented, mainly because the evidence is false and misleading. Because of the fact that the Notes have been securitized, the true chain of transfers as evidenced by the PSA and other Securitization Documents directly contradicts the evidence of the chain presented to the Court by Claimants. There have been three transfers of the Note since it was signed by the Debtor to the "Lender" as defined in the

---

[10] "Bankruptcy remote" refers to the creation of distance between the Originator, in case it later filed bankruptcy, which we now know from experience has happened many times, and moreover, the creator investment bank that established the MBS knew it was likely the Originator would go bankrupt when the artificially inflated real estate market inevitably collapsed.

Page 8 of 10

Note and DOT. Therefore any evidence that shows Note sale and transfer from the Lender directly to the Trustee of the MBS Trustee is false. And it is really misleading if the transfer in the evidence goes from the Lender to a Servicer who claims initially to be the owner and/or holder, with the right to enforce the Note. As an additional verification that the chain of sale and transferred Negotiable Instrument law was not intended to provide an avenue for false evidence to prevail, just so long as the documents presented appear to constitute a prima faci case when the evidence does not comport with the truth.

The Notes that are the subject of almost every single case in which the there will be a challenge to a Motion for Relief from Stay or an Objection to Proof of Claim, involve a Note that was securitized. In a securitized Trust, it is required to establish the unbroken chain of sales and transfers, deliveries and acceptances of the mortgage note from the Originator to the Sponsor to the Depositor and finally to the Trust. The purpose of the securitization process is to make the mortgage note legally protected from any claims a bankruptcy trustee or the FDIC might assert against the originator. This requires a series of true sales and transfers pursuant to the mandatory transfer rules of the PSA. The Trust has no authority to claim beneficial interest or any interest in the mortgage note unless there has been a complete and unbroken chain of assignments to the Trust pursuant to the strict terms of the PSA. The fact that a sale and transfer of the Note may or may not have to be recorded to maintain perfection is not relevant to the requirements of the PSA that there be an unbroken chain of sales and transfers to the Trustee of the Trust, which in this case is Pool Trustee.

The most common PSA reflects the following situation: a) The originator (i.e. the Lender), engaged in the original mortgage transaction with the Debtor; b) The Sponsor is named as the party who organized the securitization process and submitted the necessary registration statements with the SEC; c) The Depositor would be the last party in the chain of transfer to own the mortgage note before transfer to the Trust; d) The Trustee named in the Trust, and in some cases with other parties' assistance, administers the REMIC Trust Pool, which if all has been properly performed is the owner of the mortgage note for benefit of the parties who invested in the bonds issued by the Trust; e) The Master Document Custodian is designated by the PSA to maintain custody and control of all of the original notes and mortgages.

The documents signed by Debtor at the time of origination are comprised of real estate instruments. The mortgage note must be properly sold and transferred to the named Trust Pool, in an unbroken chain of title from Originator to the Sponsor to the Depositor and to the REMIC Trust Pool, that becomes the beneficiary of the Note on behalf of the investors. generally in the following sequence: a) Sale and transfer from Originator to Sponsor; b) Sale and transfer from Sponsor to Depositor; c) Sale and transfer from Depositor to the Trust. The sales and transfers above, must all be in conformance with the strict rules and time frame of the PSA, federal REMIC tax and securities law, meaning that the last sale and transfer to the Trust had to have occurred by the "Closing Date," in addition to complying with the requirements of Articles 3 and 9 of the Uniform Commercial Code with respect to the mortgage notes.

Additional questions are raised with regard to why there is no evidence that the transfers were legitimate pursuant to the PSA and federal law. Assignments years after origination simply cannot be. The PSA would not allow such assignment to the Trustee at that time. a) Why present assignment of Mortgages from MERS years after the fact, instead of presenting the evidence of the transfers pursuant to the PSA. Even if the time factor were not an issue, MERS transfers are invalid because MERS was never a real beneficiary of the note or mortgage, but merely a nominee. MERS, if questioned, will deny any beneficial ownership in the mortgage or note. In fact, its own website states this very fact. It is well established by case law provided that MERS cannot assign beneficial interests in Notes. b) Since no party could not have assigned a Note years after origination to the Trustee, if the mortgage had already been assigned to the Trustee years earlier, this raises the question as to why a Servicer or Trustee would attempt to "create" an assignment to the Trustee years after any such transfer would have had to been completed? c) Additionally, evidence is often presented that purports to show that the Originator (Lender) transferred its beneficial interest in the Note and Mortgage to the Servicer, or sometimes to the Trustee by endorsements on the Note. If this evidence is true, how could the claimant submit an Assignment of Mortgage from MERS to Trustee dated years after the fact and why would it do so? d) As stated, both these forms of evidence, the endorsements on the Note and the MERS Assignments contradict the terms and requirements of the PSA, and federal law. They also contradict the evidence that would be shown on the MERS MIN Summary and Milestone History, if the Movant would produce these. Why concoct and/or present evidence that contradicts the PSA, and federal law, when the terms of PSA is the only way the Note could properly have had the ownership of the Note effectively assigned to the REMIC Trust Pool? Incidentally, this is an additional reason to require the original Note be brought in. Debtor agrees that the REMIC Trust Pool should be the beneficial owner of the note. Whether it is or not, depends upon proof of an unbroken chain of transfers pursuant to the PSA.

These questions are usually not answered months after Debtors have raised these issues. Why is such proof not submitted to the Court? Why do Servicers and Pool Trustees fight so hard against discovery that Debtors have a right to? These questions are particularly troubling given the fact that it is the Claimant's burden of proof to establish these issues even on the most basic of issues, namely, that of standing.

                            Respectfully submitted,
                            /S/ Ronald Ryan
                            Ronald Ryan, Debtor's Counsel

CERTIFICATE OF SERVICE

I certify that on June 23, 2010, a true copy of the forgoing was emailed to: Jessica R. Kenney McCarthy Holthus Levine 3636 North Central Avenue Suite 1050 Phoenix, AZ 85012, Attorneys for Movant, Deutsche Bank National Trust Company, as Trustee in trust for the benefit of the Certificateholders for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2004-W8; and Debtor.