Ronald Ryan
Ronald Ryan PC
Attorney at Law
1413 E. Hedrick Drive
Tucson, Arizona 85719
(520)298-3333 phone (520)743-1020 fax
AZ #018140 Pima County #65325

UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA TUCSON

| | |
|---|---|
| **ANTHONY TARANTOLA, DEBTOR** _____ **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2004-W8, ITS ASSIGNEES AND/OR SUCCESSORS, MOVANT** **VS.** **ANTHONY TARANTOLA, DEBTOR RESPONDENT** | **Case # 4:09-bk-09703-EWH** **DEBTOR'S POST TRIAL BRIEF** **HEARING: 6/23/10 @ 9:00 AM** **(MOTION TO LIFT STAY HEARING)** Chapter 13 |

I. STATEMENT OF SOME MAJOR KEY FACTS AND REFERENCES TO THE RECORD WITH A FEW EXHIBITS

A Statement of Some Major Key Facts and References to the Record with A Few EXHIBITS is attached hereto and includes a statement of some key facts summarized, portions of PSA, Garfield Declaration without Appendix, and Debtor's Summary of Movant's Discovery Responses.

II. CONSTITUTIONAL STANDING ("CS") AND REAL PARTY IN INTEREST ("RPI")

First, Debtor is not taking the position that the Trustee of a MBS Trust that is shown

1

to hold and own a mortgage Note for the benefit of the Investors cannot pursue a Motion for Relief from Stay.[1] However it must be shown that this is actually the case and the burden of proof is on Movant. This is due to the doctrines of Standing and Real Party in Interest. While it is true that a Holder may enforce a Note, where a "Holder" is one to whom the Note was negotiated in one of three ways (specifically to their name; in blank; or either on an allonge) and transferred to them for the purpose of giving the right to enforce the Note. However, this is not enough to get past the RPI issue in Bankruptcy Court even in a Motion to Lift Stay ("MLS") proceeding. Every case must be brought in the name of the Real Party in Interest ("RPI"). The RPI is the party "whose own funds are at stake in the outcome of the litigation."[2] In this case, Deutsche, the Trustee of MBS Trust,[3] would arguable have authority to act on behalf of the Real Party in Interest.[4] The Real Party in Interest ("RPI") are the Investors, aka Certificate Holders ("CH"), aka Mortgage Bond Holders ("BH"), since they are the party whose own financial interest is hypothetically at stake in the outcome of the litigation. They are the only party that paid value into the transaction.[5] And because the action would have been brought in the name of the RPI

---

[1] Debtor assumes that the Court is well aware of the basic principals with regard to securitized mortgages by now.

[2] See also *In re Sobczak*, 369 B.R. 512, 517-18 (9th Cir. BAP 2007), "a 'party in interest' may be one who has an actual pecuniary interest in the case, one who has a practical stake in the outcome of the case, or one who will be impacted in any significant way in the case.

[3] The MBS Trust in question is that in the Argent Securities Inc., Asset-backed Pass-through Certificates, Series 2004-W8, as set forth in the heading of this action.

[4] The point is conceded for purposes of Stay Relief, though in some other action far afield from an MLS proceeding, or even an ordinary adversary proceeding to obtain declaratory relief of various kinds. Debtor would argue that its authority is too limited, and "MBS Trusts" are not really Trusts, because the loyalty of the Trustee is the Wall Street Investment Banking Firm ("WSIBF") that created the Trust and make all the important decisions, and its key people.

[5] Other than the Borrowers who invested money (down payment and payments until unable to afford to continue, in cases where they cannot), hope, sweat and tears.

2

there would be no problem there.[6] But this presumes that the Trust became the owner of the Note in Question ("Note") for the benefit of the CH.

Because the Court is so well versed in the case law in this area, Debtor will mainly focus on those authorities that discuss the meaning of "an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. Fed. Election Comm'n*, 128 S.Ct. 2759, 2768, 171 L.Ed.2d 737 (2008)." And "one's own funds at risk." This means that there must be proof from Movant that the Investor Certificate Holders that it purports to represent are those whose funds are those that are at risk.

> A party may have standing-having suffered an "injury in fact"-but this may not make it the real party in interest. See, e.g., Whelan v. Abell, 953 F.2d 663, 672 (D.C.Cir.1992). Conversely, a party may be the real party in interest, but lack standing. See, e.g., Davis v. Yageo Corp., 481 F.3d 661 (9th Cir.2007).

*In re Kang Jin Hwang*, 396 B.R. 757, 16 (Bky. C.D CA 2008). In *Hwang*, the Court found CS, because Movant held the Note, but not RPI, because it was not the owner.[7] In a case with the same combination of DNB as MBS Trustee (sometimes, "DNB") and set of Argent entities, with astonishingly similar facts, DNB failed to successfully trace the identity of the various holders from Originator Argent to itself, it failed to prove standing. *In re Hayes*, 393 B.R. 259, 268 (Bankr.Mass., 2008). Like here, the Limited Powers of Attorney in that case were insufficient.[8] Moreover, just as in this case, Deutsche Bank failed to submit any

---

[6] ". . . FOR THE BENEFIT OF THE CERTIFICATE HOLDERS . . ." satisfies the "brought in the name" requirement of the RPI Rule (FRCP 17(a)).

[7] In our case, Deutsche, has not proven the Trust is either holder nor owner, on behalf of Investors, and in fact all the credible evidence is the opposite.

[8] Compare how practically identical the *Hayes* (terms listed on pp. 264-5) Limited Power of Attorney is to those in this case.

3

evidence that the note was included in the PSA or subject to its terms, nor was there a "Mortgage Loan Schedule" including the note ever submitted into evidence. "Thus, consistent with the holdings in *In re Maisel*, 378 B.R. at 22, and *In re Parrish*, 326 B.R. 708, 719 (Bankr.N.D.Ohio 2005), the Court finds that Deutsche Bank failed to adequately trace the loan from the original holder, Argent Mortgage Company, LLC, to it. See also *In re Foreclosure Cases*, No. 1:07CV2282, 2007 WL 3232430 (N.D.Ohio Oct.31, 2007)." *In re Hayes*, 393 B.R. 259, 268 (Bankr.Mass., 2008). The U.S. District Court in Nevada in the decision affirming the consolidated denial of 19 Stay Relief cases brought by MERS in *MERS v. Chong, et al*, 2:09-cv-00661-KJD-LRL Doc 52 Filed 12/04/09, p.4 (U.S. D.Nev. 2009)[9] indicated the importance that the moving party actually receives or forfeit money when borrowers make or fail to make their payments. Losing fees does not amount to having funds at risk, because the latter implies that there was an investment on one's own resources. That is why merely holding a note with the right to enforce does not necessarily mean that the holder is the RPI. This is also why those arguments that creditors sometimes make fail where they cite A.R.S. § 47-3301, "A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." This argument actually makes the same point being made here. And that is that possession with the right to enforce does not necessarily make the party into the RPI. See *Chong* at 4, citing *Jacobson*, 402 B.R. at 366, n.7

---

[9] The District Court affirmance in *Chong* (sometimes called MERS Consolidated) appears to be the highest authority MLS case in the 9th Circuit to date, since many awoke to the historically unique chaos wrought by the way securitization of mortgages was instituted by Wall Street Investment Banking Firms between 2001 and 2008, and the consequences this will be shown to bring. See In re Sheridan, Case No. 08-20381-TLM, Doc 30 Filed 03.12.09 Memorandum of Decision, p.1 (Bky. D. ID 2009). "Most stay relief requests proceed promptly to entry of an order, after proper notice, without any objection. *However, changes in mortgage practices over the past several years have created a number of new issues.*" Emphasis added.

4

(quoting *Hwang*, 396 B.R. at 767). Though there are cases where an agency relationship can permit a party pursue a MLS case for the RPI, such as in the case of an MBS Trustee, but in such cases the action must nevertheless be brought in the name of the RPI. *Id.* And there must be proof of a sufficiently grant of authority and limited powers of attorney are strictly construed. *In re Wells*, 407 B.R. 873, 881 (Bankr. N.D. Ohio, 2009); See *In re Hayes*, supra at 268, 270, fn.6 . Moreover, the acting party must provide evidence that it is "acting for the current *owner of the beneficial interest in the note* [otherwise] it has failed to meet its burden of establishing that it is a real party in interest with standing." Chong, supra at 5. Emphasis added. Chong clearly speaks to the fact that ownership of the Note is what makes a party the RPI. This makes sense, because how else can a holder have its own funds at risk. They must have paid value unless a unique case comes along where the movant proves a note was gifted to them by the former owner. Even though Stay Relief motions may have a lower standard after standing and RPI are established, A MLS must be brought in the name of the RPI.

> A motion for relief from stay is a contested matter under the Bankruptcy Code. See Fed. R.Bankr. P. 4001(a); 9014( c). Bankruptcy Rule 7017 applies in contested matters. Rule 7017 incorporates Federal Rule of Civil Procedure 17(a)(1) which requires that "[a]n action must be prosecuted in the name of the real party in interest." See also, *In re Jacobson*, 402 B.R. 359, 365-66 (Bankr. W.D. Wash. 2009); *In re Hwang*, 396 B.R. 757, 766-67 (Bankr. C.D. Cal. 2008).

*Chong,* supra at 4.

It is contractually and legally impossible for the Trust to ever obtain "legal title" to the Note, for the benefit of the Investors, if the Note had not been **transferred serially from the original Lender as listed in the Deed of Trust, dated November 7, 2003 ("DOT"),**

5

**Argent Mortgage Company LLC ("Lender" or "Originator"), to Argent Securities Inc., "Depositor," to Ameriquest Mortgage Company, "Seller," to Deutsche Bank National Trust Company, as "Pool Trustee," by the "Cut-off Date" of May 1, 2004, or the "Closing Date" of May 6, 2004.**").[10] Such requirements are standard and universal with regard to MBS Trust Pools, and are mandatory. This is formalized in the Pooling and Servicing Agreement ("PSA"), and the Prospectus, among other Securitization Documents, and necessary for obtaining the full tax benefits of federal REMIC law. The order of sales, negotiations and transfers of the Note, the presence of all intervening indorsements being present on Note, and the fact that these and several other requirements must be accomplished by the Cutoff or Closing Date. Additionally, **only the final indorsement to the Trustee may be in blank, while the intervening indorsements (Originator to Depositor to Seller) must be shown serially on the Note**. Without successful Pooling there is no Note in the Trust and without this, the Trustee has no Standing and is not the RPI (for the benefit of the Investors). The transfers done properly as set forth above will be called the "proper serial transfers for successful pooling of the Note." See Statement of Key Facts and Reference to the Record, (I)(A) and (B), attached hereto.

In this case, even the copy of the Note produced the day of trial have what appear to be an indorsement from Argent Mortgage Company to Ameriquest Mortgage Company and a second indorsement in blank from Ameriquest Mortgage Company. This in and of itself invalidates the successful Pooling to the MBS Trust in this case, because it does not have the proper serial transfers for successful pooling of the Note. The only basis that

---

[10] See (I)(A) and (B) in Statement of Some Major Key Facts and References to the Record. These items establish the requirements for successful pooling.

6

Deutsche could have had to pursue the MLS was if it were the MBS Trustee for the Investors in pooled notes in which the Debtor's Note was included.  Additionally, based on the totality of the record, it is highly improbable that the Originator indorsed the Note at a time when it owned and held it, if the Note had been successfully pooled, due to the Cutoff date prior to which it would have had to sell, negotiate and transfer the Note to the Depositor.

On 01/05/2010 at doc 39, Movant filed the Notice of Filing of Exhibit and Exhibit in Support of Motion for Relief from Automatic Stay, which stated:

> PLEASE TAKE NOTICE that Movant, Deutsche Bank National Trust Company , as Trustee in trust for the benefit of the Certificateholders for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2004-W8, its assignees and/or successors, is filing a NOTICE OF EXHIBIT AND EXHIBIT IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY. **A true and correct copy of the Allonge of Note and Exhibit is attached hereto** as Exhibit "1".

p.2, emphasis added.  This true and correct version of the Note had no indorsements on the Note from Argent Mortgage Company to Ameriquest Mortgage Company nor a second indorsement in blank from Ameriquest Mortgage Company.  Instead it had an unendorsed copy of the Note and an "Allonge."  Doc 39-1 Filed 01/05/10.  The Allonge purported to "transfer, endorse and assign the within Note and Deed of Trust/Mortgage securing the same, so far as the same pertains to said Note."  And it said, "Pay to the order of: Deutsche Bank National Trust Company, as Trustee in trust for the benefit of the Certificateholders for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2004-W8."  It was signed by Kathy Smith, in Orange County, CA, as the Assistant Secretary and Vice

7

President of, and on behalf of Argent Mortgage Company, LLC.[11] It was undated, but Movant's witness testified at trial that it was prepared at the request of the litigation team for the purposes of this Court proceeding. Assuming this one was the real true and correct version, the same likewise insures that there was no way that the Note could have been successful pooled. The necessary serial transfers are not present and the Note could not have made it to the Pool by the Cutoff Date. Additionally, the witness admitted to what amounts to intentional fabrication of evidence by attaching an allonge to a copy of the Note and not to the original. See *Adams v. Madison Realty & Development, Inc.*, 853 F.2d 163, 166 (C.A.3 (N.J.), 1988). A.R.S. § 47-3204(A). Two rationales have been advanced for the permanent and immediate attachment of an allonge to the *original note*. The first is to avoid the potential of fraud, or fraud on the Court, and the other is because of its utility in preserving a traceable chain of title, thus furthering the Code's goal of free and unimpeded negotiability of instruments. *Id.* at 167.[12]

A third version of the Note was filed with the MLS exhibits, Doc 35-1 Filed 12/08/09, Page 19 to 21 of 31. This true and correct version has no indorsements nor allonge. But also filed with the MLS exhibits was an Assignment of Mortgage / Deed of Trust, wherein American Home Mortgage Servicing, Inc., as servicer for Argent Mortgage Company, LLC, wherein it purported to Assign the Deed of Trust and the all beneficial interest and rights in the Note, to Deutsche Bank National Trust Company, as Trustee in trust for the benefit

---

[11] Plaintiff's Trial Exhibit C showed that Kathy Smith signed a Limited Power of Attorney in another case, which was "Notarized" in Duvall County Florida on 10/23/2009, where she granted powers to several people to act for Deutsche Bank National Trust Company as Trustee for American Home Mortgage Assets Trust 2007-1 Mortgage-backed Pass-through Certificates, Series 2007-1, as the Assistant Secretary for Deutsche's Attorney in Fact, American Home Mortgage Servicing, Inc.

[12] Notice that the Adams Court was of the opinion that providing a traceable chain of title furthers the goal of efficient sales of Notes, rather than it being a hindrance.

8

of the Certificateholders for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2004-W8, as of 11/12/2009. Obviously, if the Note had been successfully pooled, Argent Mortgage Company, LLC, the Originator could not have held or owned the Note since sometime prior to May 1, 2004. One cannot transfer a Note it does not hold or own. Conversely, if it did still hold and own it on 11/12/2009, it could not have been successfully pooled.

Debtor has challenged the validity, authenticity and authority of the negotiations on the Note in the pleadings. Response to MLS, doc 40, filed 1/17/2010, ¶ 2. This shifts the burden of proof on these issues to the claimant. ARS § 47-3308(A). This would include explaining the absence of an indorsement that ought be present. When dealing with securitized mortgages, when thusly challenged, according to several authorities, Movant must prove (or adequately explain, according to some authorities) the serial sales, negotiation and transfers of the Note from the Originator to the party seeking to enforce, which must be within the chain. This means proving or adequately explaining how the MBS Trust in question could have come to hold and own the Note for the benefit of the Investors when the Note could not by any stretch of logic have been successfully pooled.

At an increasing and accelerating pace, Bankruptcy Courts have expressed anger and outrage at the practices of mortgage claimants in the MLS context, such as presenting a Note with an indorsement when they do not own the Note, or filing evidence that states it is a true and correct copy, and then later filing a different true and correct copy. This kind of thing, plus not automatically volunteering securitization info have cause Debtor's counsel

9

many extra hours of work.[13]

III. MOVANT'S DISCOVERY RESPONSES COVER THE GAMET OF ISSUES

Debtor refers the Court to Movant's Trial Exhibits E and E.1. These are Movant's responses to discovery and the necessary implications of the responses. These in and of themselves prove that Movant cannot prevail. Debtor's Summary of Movant's Discovery Responses is included again as part of Debtor's Statement of Some Major Key Facts.[14]

IV. NO DEFAULT[15]

There should also be no argument that "cause" for stay relief requires that there be a "default."[16] Debtor's expert testified that in his opinion there was a 90% probability of no default, when a plethora of 3rd Party Source Funds are applied. See Statement of Facts. His opinion is supported by precise terms of the Deed of Trust ("DOT"), as well as pursuant to statutory law, sometimes called the "Discharge by Payment" rule in the U.C.C.[17] Debtor has a contractual right to have their account credited for "Miscellaneous Proceeds" pursuant to The Debtor's DOT states at ¶ M, on page 2, "Miscellaneous Proceeds," states:

---

[13] *In re Rivera, 342 B.R. 435, 441 (Bankr. D.N.J. 2006). HSBC Bank USA, N.A. v. Valentin N.Y.Sup., No. 15968/07 (S.Ct. NY 2008); In re Nosek, 363 B.R. 643 (Bankr.Mass., 2007); In re Parsley, 384 B.R. 138 (Bankr. S.D. Tex., 2008); In re Schuessler, Case No. 07-35608 (cgm) (Bankr. S.D.N.Y. 4/10/2008) (Bankr. S.D.N.Y., 2008); In re Wilborn, Case No. 03-48263-H4-13 (Bankr. S.D. Tex. 2/18/2009) (Bankr. S.D. Tex., 2009); In re Wells, 407 B.R. 873 (Bankr. N.D. Ohio, 2009)(Show Cause Order); In re Hudak, Bankruptcy Case No. 08-10478-SBB (Bankr.Colo. 10/24/2008) (Bankr.Colo., 2008), at fn 3; In re Hayes, 393 B.R. 259, 267 (Bankr.Mass., 2008); In re Comcoach Corp., 698 F.2d 571, 573 (2nd Cir.1983) (citations omitted); In re Refco, 505 F.3d 109, 115 fn. 10 (2nd Cir.2007); In re Maisel, 378 B.R. 19, 21-2 (Bankr.Mass., 2007); In re Vargas, supra at 516 (Bankr. C.D. Cal. 2008); MERS Consolidated* at the Bky Court level.

[14] Exhibit C to State of Key Facts (Movant's Trial E.1)

[15] Although the Court did not entertain the argument, documentary and expert testimony, it is touched upon briefly. Counsel apologizes and asks for a little indulgence because it is such a major part of expert Garfield's findings and the Deed of Trust has a contractual provision. An adversary will be filed in this and others as soon as possible.

[16] Failure to make post-petition mortgage payments can constitute cause for lifting the stay. The debtor has the burden of showing there is no cause to terminate the stay. *In re Ellis*, 60 B.R. 432 (9th Cir. BAP 1985).

[17] U.C.C. § 3.602(A), "Discharge by Payment" rule, set forth in the Arizona version at ARS § 47-3602(A).

10

> (N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds **paid by any third party** (other than insurance proceeds paid under the coverages described in Section 5) for: (I) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

The DOT governs in what order "Miscellaneous Proceeds" are to be applied to the Obligation, and the provision is set forth ¶ 2, page 5 of the DOT. In places within the language in the DOT, when discussing the application of Miscellaneous Proceeds, it is specifically stated that the application of such proceeds is governed by ¶ 2 of the DOT. See 3 separate statements with such language in ¶ 11, page 9 of DOT.

> Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, **with the excess, if any, paid to Borrower**. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

See ¶ 11, page 9 of DOT. Emphasis added. Said paragraph 2, paraphrased basically states that they are applied the same way regular payments are credited. When Debtor's expert opined a 90% probability that Debtor is not in default when these credits are applied, and this evidence was uncontroverted, it seems that even if standing were established that this overcomes Movant's testimony that Debtor was in Default, and shifts the burden back, particular where it has been established that Movant claims not to know of 3rd Party Source Funds, and that it refused to even attempt to seek out facts within its exclusive province. The Miscellaneous Proceeds are payments made by all 3rd Party Sources, with the exception of Mortgage Insurance and "Property Insurance," both of which are common and

11

traditional forms of insurance, and are defined in the DOT.[18]

Dated: July 8, 2010

                        Respectfully submitted,
                        /s/ Ronald Ryan
                        Ronald Ryan, Debtor's Counsel

## CERTIFICATE OF SERVICE

I certify that on this date, a true copy of the forgoing was emailed to:
Matthew A. Silverman and Jessica R. Kenney McCarthy Holthus Levine 3636 North Central Avenue Suite 1050 Phoenix, AZ 85012 through Jessica R. Kenney Attorneys for Movant, Deutsche Bank National Trust Company, as Trustee in trust for the benefit of the Certificateholders for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2004-W8; Chapter 13 Trustee; and Debtor.

                        /s/ Ronald Ryan

---

[18] These principles of Miscellaneous Payments, in the Deed of Trust ("DOT"), "Discharge by Payment" rule in the U.C.C., and 3rd Party Sources are in MB, p.23, line 21 to p.27, line 14. See contractual provisions in DOT ¶ M, on page 2; at least 3 separate places on DOT, such as ¶ 11, page 9 of DOT; and order of payment of Miscellaneous Proceeds ¶ 2, page 5 of the DOT.

12